E-FILED
Monday, 07 January, 2019  02:40:58 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| DANIEL IGWE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 15-cv-02303** |
| | ) | |
| ST. MARY's HOSPITAL, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

On November 8, 2018, this court entered an Order (#51) granting

Defendants' Motion to Enforce Settlement (#47).  The Order concluded:

> Within 35 days of the entry of this order, Defendants shall
> acknowledge in writing their obligations pursuant to the December
> 15, 2017 settlement agreement, as discussed on the record.
> Defendants shall also tender the agreed-upon settlement amount,
> stated in the transcript, to Plaintiff's attorney by that date.
> Defendants shall file a concise status report stating that they have
> done so on or before that same date. The court then will dismiss the
> case with prejudice, and Plaintiff will remain bound by the terms of
> the December 15, 2017 settlement agreement whether or not he
> acknowledges them in writing on or before that date. If Plaintiff
> intends to appeal this order, then his attorney shall hold the
> settlement amount in the client trust account until the resolution of
> the appeal.

On December 6, 2018, Plaintiff filed a Motion to Alter or Amend Further

Action and Relief From Final Judgment (#54).  On December 7, 2018, the court

entered a text order temporarily staying its November 8 Order pending

resolution of Plaintiff's Motion.  On December 20, 2018, Defendants filed a

Response (#55).  For the reasons that follow, the Plaintiff's Motion is DENIED.

Plaintiff continues to press the argument that the December 15, 2017 transcript (of the on-the-record hearing at the end of a day-long settlement conference) clearly shows that the parties did not reach a meeting of the minds on material terms.  The court's view has not changed: the transcript shows that a meeting of the minds occurred.  The court notes again that this case concerns an oral contract that was transcribed, not a written contract.  Under Illinois law, oral settlement agreements are enforceable if there is an offer, acceptance and a meeting of the minds as to the terms.  *Dillard v. Starcon Intern., Inc.*, 483 F.3d 502, 507 (7th Cir. 2007).  The court again examined the transcript of the December 15, 2017 settlement conference.  The transcript expresses a meeting of the minds as to the material terms of the agreement.  The parties, including Plaintiff personally, orally agreed to the terms of the agreement after Judge Long stated them on the record.

Some of the details needed to be ironed out, but that does not change the fact that there was a meeting of the minds.  "The 'meeting of the minds' is something of a misnomer, because the issue is ultimately not what were the parties' subjective views, but instead the question is whether the parties' objective expressions of intent show that they arrived at an agreement."  *Beverly v. Abbott Laboratories, Inc.*, 2014 WL 12660099, at *1 (N.D. Ill. Dec. 28, 2014) (citing *Laserage Tech. Corp. v. Laserage Labs., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992)).  For over a year now, Plaintiff has refused to put that oral agreement in writing.  But, "one party's later refusal to put an alleged oral agreement in writing is not

2

necessarily evidence that there was no binding agreement in the first place."
*Beverly*, 2014 WL 12660099, at *2.

In *Beverly*, the court found that "the parties' inability to agree on the some
of the topics covered by the draft written agreement (e.g., non-disparagement,
cooperation, indemnification) does nothing to upset the binding oral agreement,
whose material terms are dismissal of the case in exchange for the Settlement
Amount and mediation costs."  *Id.*  The *Beverly* court concluded: "It simply is not
uncommon for parties to enter into a binding oral agreement but not be able to
come to agreement on other potential terms in writing—yet the oral settlement
agreement remains enforceable."  *Id.*

Plaintiff argues that when the hearing occurred on December 15, 2017,
material issues preventing an enforceable contract from being formed, including
payment allocation, diversity training, non-disparagement, and confidentiality.
The court disagrees.  None of those terms presents a barrier to enforcement of the
contract.

Concerning payment allocation, the parties agreed that Defendants would
pay Plaintiff the Settlement Amount, not all of which would be non-taxable, in
exchange for a full release and dismissal of all claims.  The Settlement Amount
was the material term.  The lack of a specification in taxable versus non-taxable
amounts does not show that a meeting of the minds did not occur or that an
agreement to settle the case was not reached.  *Mia v. Potter*, 282 Fed. App'x 478,

479, 2008 WL 2570829, at *2 (7th Cir. 2008), and *Elustra v. Mineo*, 595 F.3d 699, 709

(7th Cir. 2010) are instructive on the payment allocation issue.

In *Mia*, a plaintiff argued that an oral agreement was not enforceable

where she never agreed that her settlement payment would be taxable, a term

she claimed was material. *Mia*, 282 Fed. App'x at 479.  The court disagreed,

noting that "whether the payment is taxable is not up to [Defendant]; if [Plaintiff]

wishes to dispute its taxability, she must do so with the IRS."  *Id.*  Cases citing

*Mia* address the issue in even clearer terms.  See *Tujetsch v. Bradley Dental, L.L.C.*,

2010 WL 5099981, at *2 (N.D. Ill., Dec. 8, 2010) ("Whether a settlement payment is

taxable, and whether an IRS Form 1099 must be issued, is not subject to the

parties' discretion, and thus is not material."); *White v. Lowe's Home Centers, Inc.*,

2012 WL 5497853, at *7 n.5 (N.D. Ind., Nov. 13, 2012) (same).

In *Elustra*, plaintiffs argued that a binding settlement was not reached in

the absence of allocation of a settlement amount amongst plaintiffs, but the court

rejected that argument, stating: "We find that the material terms were definite

and certain: defendants would pay $6,000 to the Elustras in exchange for their

dismissal of the lawsuit." 595 F.3d at 709.

Here, the Defendants agreed to pay the Settlement Amount in exchange

for dismissal of the lawsuit.  The lack of delineation between taxable and non-

taxable amounts is analogous to the lack of delineation in *Elustra*.  The material

terms of the agreement were definite and certain.

4

Regarding diversity training, the parties agreed that Defendant St. Mary's Hospital would acknowledge that it "will and does engage in diversity training." Plaintiff acknowledged on the record that he was not going to have any input as to the specifics of such training.  There is nothing left to negotiate about the specific way Defendant St. Mary's Hospital engages in or will engage in diversity training.

As to non-disparagement, the transcript reflects that there were six individuals Plaintiff wanted to include in the non-disparagement clause.  One of those was Defendant Smith.  Plaintiff's counsel agreed that all of those individuals would have to be employees of the hospital Defendant.  All that is left is for Plaintiff to provide the remaining five names of hospital employees. While he has refused to do so, that refusal does not transform the non-disparagement issue into an unsettled material term.

Regarding confidentiality, the transcript reflects that Plaintiff requested a mutual confidentiality clause.  Defendants state that they will include a mutual confidentiality clause in the written settlement agreement, as they have in all of the numerous drafts of the document.  There is no dispute over that term, even if the transcript does not specifically state that the confidentiality clause is mutual. No further negotiation is required here, either.

Plaintiff argues that the court's Order (#51) gave Defendants blanket authority to dictate their obligations, showing that the material terms were uncertain at the December 15, 2017 hearing.  The court disagrees that its Order

granted Defendants such blanket authority.  Further, Defendants did not

interpret it as such.  Defendants did not write up whatever terms they wanted

and then ask this court to dismiss the case.  Instead, until this court stayed

enforcement of its Order following the filing of Plaintiff's Motion to Amend or

Correct, Defendants were in communication with Plaintiff's counsel in an effort

to hammer out all of the details *consistent with the transcript of the December 15,*

*2017 hearing.*  While lacking every single detail, the transcript reflects an offer,

acceptance, and meeting of the minds, sufficiently providing enough information

to form the foundation of the written settlement agreement.

In consultation with Plaintiff's counsel, Defendants sought to memorialize

the agreement and acknowledge their obligations in writing as required by the

November 8 Order.  Instead of providing the names, payment allocation, or trust

fund information sought by Defendants, Plaintiff again sought to have the

agreement declared unenforceable.  Defendants reached out to Plaintiff's counsel

to identify which five other hospital employees were to be included in the non-

disparagement clause.  They did not get a response.  They sought to secure

Plaintiff's agreement as to the payment allocation, proposing a 50/50 split, but

they were not able to get confirmation as to whether that split was acceptable.  In

any event, as noted above, it does not appear that the tax consequences are up to

Defendants to decide.

Lastly, Plaintiff takes issue with the court's direction that the Settlement

Amount be tendered to Plaintiff's counsel and that his counsel is to hold the

6

Settlement Amount in the client trust account until the resolution of any appeal, if Plaintiff intends to appeal. Plaintiff's counsel argues that that part of the Order puts him in direct conflict with his client. However, client trust fund accounts are provided for by Illinois Rule of Professional Conduct 1.15. Holding client funds in such an account, on behalf of a client, does not generate a conflict with the client. As discussed above regarding Defendants' input on tax consequences, whether the payment is taxable is likewise not up to Plaintiff's counsel. The tax consequences do not create a conflict between Plaintiff and his counsel.

The court acknowledges that in the transcript, Plaintiff's counsel stated "I would indicate the check would go directly to Mr. Igwe." However, given the Plaintiff's indication that further proceedings are likely, the court believes it is appropriate for the check to be made out to Plaintiff's counsel who shall hold the settlement amount in the client trust account until the resolution of the appeal, if Plaintiff intends to appeal. See *Beverly*, 2014 WL 12660099, at *3 (granting motion to enforce settlement and setting forth conditions for dismissal of the case with prejudice). Because Plaintiff's counsel states that Plaintiff will not endorse a check to be deposited into the trust fund account, the court directs that the check be made payable to counsel.

IT IS THEREFORE ORDERED:

    (1) Plaintiff's Motion to Alter or Amend Further Action and Relief From Final Judgment (#54) is DENIED.

(2) The stay of the court's November 8 Order (#51) is LIFTED, although the deadlines have changed.  Pursuant to that Order, within 35 days of the entry of this order, Defendants shall acknowledge in writing their obligations pursuant to the December 15, 2017 settlement agreement, as discussed on the record.  Defendants shall also tender the agreed-upon settlement amount, stated in the transcript, to Plaintiff's attorney, made payable to Plaintiff's attorney (to be held in Plaintiff's attorney's client trust account) by that date.  Defendants shall file a concise status report stating that they have done so on or before that same date. The court then will dismiss the case with prejudice, and Plaintiff will remain bound by the terms of the December 15, 2017 settlement agreement whether or not he acknowledges them in writing on or before that date.  If Plaintiff intends to appeal this order, then his attorney shall hold the settlement amount in the client trust account until the resolution of the appeal.

(3) Within ten business days from the entry of this order, Plaintiff shall provide Defendant the names of the six individuals, employed by the Defendant hospital, that he wishes to include in the non-disparagement clause.  Failure to do so will result in a waiver of the issue.

(4) Within ten business days from the entry of this order, Plaintiff shall confirm whether he agrees with the proposed split in payment allocation. Should no agreement be reached, the written acknowledgement of Defendants' obligations may remain silent on the issue.

(5) Within ten business days from the entry of this order, Plaintiff's attorney

shall provide Defendants with the name of his attorney's client trust

account.

Entered this 7th day of 2019

s/Colin S. Bruce
U.S. DISTRICT COURT JUDGE